# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CENTRAL DIVISION

TIMOTHY J. TRACY,

        Plaintiff,

vs.

MICHAEL J. ASTRUE, Commissioner
of Social Security,

        Defendant.

No. C11-3072-MWB

**REPORT AND RECOMMENDATION**

---

### *Introduction*

Plaintiff Timothy J. Tracy seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying his application for disability insurance benefits ("DIB") pursuant to Title II of the Social Security Act ("Act") for the period of time beginning June 15, 2006, and ending September 21, 2008.[1]  Tracy contends that the administrative record ("AR") does not contain substantial evidence to support the Commissioner's decision that he was not disabled during that period of time.  For the reasons that follow, I recommend that the Commissioner's decision be **reversed and remanded** for an award of benefits.

### *Procedural History*

On December 1, 2008, Tracy protectively filed his DIB application, alleging disability beginning June 15, 2006.  The claim was denied initially on February 12, 2009, and upon reconsideration on April 20, 2009.  AR 18.  Tracy then requested a hearing before an Administrative Law Judge ("ALJ").  AR 53-66.  On June 9, 2010,

---

[1] Tracy has been granted benefits effective September 22, 2008.  As such, the dispute in this case involves only the period of time between that date and his earlier alleged onset date of June 15, 2006.  My discussion of medical evidence will focus primarily on that time period.

ALJ Jo Ann Draper held a video hearing and on July 2, 2010, she issued a decision finding that Tracy was not disabled during the contested time period.    AR 18-26.

Tracy sought review by the Appeals Council.    On November 28, 2011, the Appeals Council denied his request for review.    AR 6-11.    The ALJ's decision thus became the final decision of the Commissioner.    AR 6; *see also* 20 C.F.R. § 416.1481.

On December 20, 2011, Tracy filed a complaint in this court seeking review of the ALJ's decision.    This matter was referred to me pursuant to 28 U.S.C. § 636(b)(1)(B) for the filing of a report and recommended disposition of the case.    The parties have briefed the issues and the matter is now fully submitted.


### Factual Overview

I have reviewed the entire administrative record and provide the following as a summary of relevant facts.    I will discuss additional evidence as necessary in my analysis of the arguments presented in this case.

Tracy was born in 1954.    AR 489.    He worked for 31 years as a driver for United Parcel Service and also farmed 400 acres.    AR 144, 489-90.    His job required him to lift 30 to 80 pounds normally and sometimes up to 150 pounds.    AR 489-90. His truck was not insulated and he was exposed to the weather about 80 percent of the time.    AR 491.

Tracy had a percutaneous transluminal coronary angioplasty in 1997 and an angiogram with stent placement in May 2006.    AR 395.    He continued to work full time after these events but suffered another myocardial infarction (his third) on June 4, 2006.    AR 478-81, 492.    He was visiting Chicago at that time and was hospitalized at Northwestern Memorial Hospital.    AR 478-81, 500-01.

Tracy ultimately returned home for continuing care with Dr. Samuel Congello, who had been his cardiologist since September 2, 1997.    AR 461.    Tracy stopped

working as a UPS driver and hired others to farm his land after June 2006. AR 131, 136. As a result of the June 2006 heart attack, Tracy became winded and tired easily and had difficulty with his memory. AR 133, 136. No physician released him to return to work after June 4, 2006. AR 136. He did commence cardiac rehabilitation on June 29, 2006, and expressed a desire to return to work, but was advised to "go slow." AR 317, 366.

On August 16, 2006, Tracy was discharged from cardiac rehabilitation and advised to walk 6-7 times a week for 30-60 minutes. AR 317. On August 22, 2006, Dr. Congello noted a "significant myocardial infarction" on Tracy's stress test and expressed concern "about the possibility of a ventricular arrhythmic contributing to his dizziness symptoms." AR 392. He advised Tracy not to return to work due to his dizziness. AR 393. On September 13, 2006, Tracy reported problems with dizziness and an echocardiogram on that date documented diastolic abnormality of the left ventricle. AR 313.

On December 13, 2006, an electrocardiogram showed "marked sinus brachycardia, inferior infarct, and some STs with lateral ischemia." AR 308. Tracy was found to have a 30% ejection fraction and occlusion of his stent due to the progression of his coronary artery disease. AR 309. On December 29, 2006, Dr. Congello noted that Tracy was unable to return to work until further notice. AR 477.

On January 19, 2007, Tracy was hospitalized for dizziness and chest discomfort after exertion. AR 297. An angioplasty was performed because "his symptoms persist despite medical therapy." AR 295, 298. On January 30, 2007, Tracy reported that he felt "fine" but had not done much physical activity. AR 360.

On February 15, 2007, an echocardiogram again documented diastolic abnormality in the left ventricle and noted left ventricle hypertrophy, left ventricular systolic dysfunction with an ejection fraction to 40% and left ventricular index of

myocardial performance at 0.4.    AR 291.    On March 13, 2007, testing indicated abnormal wall motion and documented an infarct involving more than 15% of Tracy's heart.    AR 286.

## Summary of ALJ's Decision

The ALJ conducted a hearing on June 9, 2010, and received testimony from three witnesses:    Tracy, his wife (Laura Tracy) and Vanessa May, a Vocational Expert.    On July 2, 2010, the ALJ issued a ruling that made the following findings:

(1)    The claimant meets the insured status requirements of the Social Security Act through December 31, 2011.

(2)    The claimant has not engaged in substantial gainful activity since June 15, 2006, the alleged onset date (20 CFR 404.1571 et seq.).

(3)    The claimant has the following severe impairments: Coronary Artery Disease, Hypertension, Status Post Colon Cancer Surgery, and Hyperlipidemia (20 CFR 404.1520(c)).

(4)    The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

(5)    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that the claimant can only occasionally climb, balance, stoop, kneel, crouch, or crawl; he should not climb ladders, ropes, or scaffolds. The claimant can only occasionally be exposed to extreme heat, cold, humidity, or pulmonary irritants. Further, he is limited to a work environment free of fast paced productions requirements.

(6)    The claimant is unable to perform any past relevant work (30 CFR 404.1565).

(7)     The claimant was born on February 23, 1954 and was 52
        years old, which is deemed as an individual closely
        approaching advanced age, on the alleged disability onset
        date (20 CFR 404.1563).

(8)     The claimant has at least a high school education and is able
        to communicate in English (20 CFR 404.1564).

(9)     The claimant has acquired work skills from past relevant
        work (20 CFR 404.1568).

(10)    Considering the claimant's age, education, work experience,
        and residual functional capacity, the claimant has acquired
        work skills from past relevant work that are transferable to
        other occupations with jobs existing in significant numbers in
        the national economy (20 CFR 404.1569, 404.1569(a) and
        404.1568(d)).

(11)    The claimant has not been under a disability, as defined in the
        Social Security Act, from June 15, 2006, through the date of
        this decision (20 CFR 404.1520(g)).

AR 20-26.

In evaluating Tracy's impairments, the ALJ made note of Tracy's allegation that he was unable to work due to a combination of impairments that prevented him from performing substantial and gainful activity. AR 22. Specifically, the ALJ recognized Tracy's report that his heart problems caused him to be tired easily with an "exertion refraction rate at 18 to 20 percent." *Id.* She also acknowledged Tracy's report that he (a) "experienced severe pain in his stomach (constant, dull, and steady), back (steady and aching), and back (out of breath with any exertion)" and (b) that these symptoms "were exacerbated by stress, exertion, deep breaths, lying in certain positions, extreme cold air, and climbing stairs." *Id.*

After describing Tracy's self-report, the ALJ found that "the objective findings in this case fail to provide strong support for the claimant's allegations of disabling limitations." *Id.* She stated:

> More specifically, the medical findings do not support the existence of limitations greater than the above listed residual functioning capacity. In terms of the claimant's alleged impairments, review of the record indicates that the claimant has been diagnosed with the following medically determinable impairments: Coronary Artery Disease, Hypertension, Status Post Colon Cancer Surgery, and Hyperlipidemia. The record reveals the claimant experienced a myocardial infarction in May/June 2006, where stenting was ultimately performed. He was seen for follow-up in August 2006 and his LVEF [left ventricle ejection fraction] was noted to be 44%. Nuclear stress test revealed a large infarct, which was out of proportion to the LVEF, but the doctor noted that the previously stated ejection fraction was improved from before. Further, treatment notes reveal the claimant denied chest pain, arm pain, and jaw pain. Though he reported occasional dizziness upon exertion, he noted no syncopal episodes. Plan notes indicate that the claimant's "good exercise capacity suggests a good 5 years survival.["] Plan notes show that the claimant had no symptoms of congestive heart failure. Treatment notes from March 23, 2007 indicate the claimant ejection fraction had improved to 40% and further reveal that the claimant had been exercising at home, which suggests that his symptoms were not as severe as alleged in connection with this application and appeal. The claimant's treating physician opined that the claimant was capable of lifting 50-55 pounds. On September 23, 2008, after the period in question in the current instance, the claimant was seen having fallen off a ladder while picking apples, which also suggests that his symptoms are not as severe as alleged in connection with his application and appeal. He subsequently experienced severe back pain and was found to have a compression fracture of the lumbar spine, as well as colon cancer (which appears to have been removed with no further evidence by November 2008). Overall, after September 2008, the evidence indicates much more severe functional limitations on the part of the claimant. However, prior to that date, treatment notes indicate that the claimant was managing relatively well - even engaging in physical exercise and climbing ladders. The undersigned also notes that during the pertinent period, the claimant took medications appropriate to his conditions, which successfully

treated his conditions without materially adverse side-effects ("none" noted throughout). (Exhibits 2E, IF, 2F, 3F and 5F).

*Id.*

The ALJ discounted Third Party Function Reports submitted by Tracy's wife and brother because those individuals are not medically trained and, due to their relationship with Tracy, are not disinterested witnesses. AR 23. She also found that the limitations noted in those reports are "not consistent with the objective medical evidence as a whole." *Id.*

Finally, the ALJ decided to afford "little weight" to opinions contained in letters written by Dr. Congello, who she described as "claimant's treating physician." *Id.* On May 19, 2009, Dr. Congello wrote:

> Timothy J. Tracy has been a patient of mine since September 2, 1997. In 2006 he suffered a large myocardial infarction that left him with a markedly reduced ejection fraction. He has been unable to work since that time due to his significant ischemic cardiomyopathy.
>
> His symptoms have continued to progress, and his ejection fraction has continued to worsen. He recently suffered an episode of sudden cardiac death necessitating a prolonged hospital course. The patient now has an implantable cardioverter-defibrillator (ICD) placed for his end-stage ischemic cardiomyopathy. He is under consideration for a transplant.
>
> Based on these findings, I think he would be considered totally disabled from a cardiac standpoint.

AR 461. On June 7, 2010, Dr. Congello wrote: "Mr. Tracy's heart condition has continued to worsen after June, 2006 and it is my opinion that he should not have exerted himself to lift more than 10 pounds at any time after June, 2006." AR 464.

In finding that these opinions were entitled to "little weight," the ALJ stated:

> The opinion of a treating physician is entitled to great weight unless there is persuasive contradictory evidence. A treating physician's medical opinion,

on the issue of the nature and severity of an impairment, is entitled to special significance; and, when supported by objective medical evidence and consistent with other substantial evidence of record, entitled to controlling weight. (Social Security Ruling 96-2p). On the other hand, statements that a claimant is "disabled", "unable to work", can or cannot perform a past job, meets a Listing or the like are not medical opinions but are administrative findings dispositive of a case, requiring familiarity with the Regulations and legal standards set forth therein. Such issues are reserved to the Commissioner, who cannot abdicate his statutory responsibility to determine the ultimate issue of disability. Opinions on issues reserved to the Commissioner, such as those of the doctors reported above, can never be entitled to controlling weight, but must be carefully considered to determine the extent to which they are supported by the record as a whole or contradicted by persuasive evidence. (20 CFR 404.1527(d)(2) and Social Security Ruling 96-5p.). The undersigned notes that Dr. Congello's opinion is not consistent with the other physicians' opinions in the record, as a whole. Moreover, the restrictions he retroactively (3-4 years later) placed upon the claimant, as well as the opinion that he was unable to work 3 years earlier, are not supported by the medical evidence as a whole, nor his own contemporaneous treatment notes. The possibility always exists that a doctor may express an opinion in an effort to assist a patient with whom he or she sympathasizes [sic] for one reason or another. Another reality which should be mentioned is that patients can be quite insistent and demanding in seeking supportive notes or reports from their physicians, who might provide such a note in order to satisfy their patients requires [sic] and avoid unnecessary doctor/patient tension. While it is difficult to confirm the presence of such motives, they are more likely in situations where the opinion in question departs substantially from the rest of the evidence of record, as in the current case. (Exhibits 10F and 12F).

AR 23-24.

The ALJ then observed that "[a]side from" Dr. Congello's opinions, the record "does not contain any opinions from treating or examining physicians indicating that the claimant is disabled or even has limitations greater than those determined in this decision (during the period in question)." AR 24. Having made various credibility determinations, the ALJ concluded that her finding as to Tracy's RFC "is supported by

the objective medical evidence, the medical opinions when afforded appropriate weight, and the claimant's subjective complaints during the relevant period when taken in proper context." *Id.*

### Disability Determinations and the Burden of Proof

A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the

claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141, 107 S. Ct. 2287, 2291 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on her ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform

exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his or her age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir. 2000). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). At Step Five, even though the burden of

production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

### The Substantial Evidence Standard

The court will affirm the Commissioner's decision "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis*, 353 F.3d at 645. The Eighth Circuit explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Wester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not

"reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

### *Discussion*

Tracy raises the following issues:

      A.    The ALJ erred when she failed to give controlling weight to the opinions of the treating cardiologist, Dr. Congello, as required by 20 C.F.R. § 404.1527(d)(2).

      B.    The ALJ failed to evaluate the factors required in 20 C.F.R. § 404.1527(d) for the evaluation of the opinion of treating cardiologist, Dr. Congello.

      C.    The ALJ erred by giving greater weight to Dr. Sarik who was not a treating physician" under 20 C.F.R. § 1502.

D.  The ALJ erred when she failed to provide a rationale based on the record as a whole for rejecting Tracy's testimony as required by SSR 96-7p.

I will address each issue separately.

## A.  Did the ALJ err in failing to give controlling weight to Dr. Congello's opinions?

The Social Security regulations state, in relevant part:

Treatment relationship. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.

20 C.F.R. § 404.1527(d)(2) [emphasis added].[2]  What this means is that a treating physician's opinion is generally given controlling weight, but is not inherently entitled to it.  *Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006).  A treating physician's opinion "does not automatically control or obviate the need to evaluate the record as a whole." *Leckenby v. Astrue*, 487 F.3d 626, 632 (8th Cir. 2007).  But that opinion will be given controlling weight if it is well-supported by medically acceptable clinical and

---

[2] Section 404.1527 has been amended, with certain paragraphs being re-numbered.  All citations to that section in this ruling are to the version in effect during the relevant period of time.

laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record. *Hacker*, 459 F.3d at 937.

When a treating physician's opinion is entitled to controlling weight, the ALJ must defer to the physician's medical opinions about the nature and severity of an applicant's impairments, including symptoms, diagnosis and prognosis, what an applicant is capable of doing despite the impairment, and the resulting restrictions. 20 C.F.R. § 404.1527(a)(2); *Ellis v. Barnhart*, 392 F.3d 988, 995 (8th Cir. 2005). The ALJ must "always give good reasons" for the weight given to a treating physician's evaluation." 20 C.F.R § 404.1527(d)(2); *see also Davidson v. Astrue*, 501 F.3d 987, 990 (8th Cir. 2007). A treating physician's conclusion that an applicant is "disabled" or "unable to work" addresses an issue that is reserved for the Commissioner and therefore is not a "medical opinion" that must be given controlling weight. *Ellis*, 392 F.3d at 994.

Under these standards, the opinions contained in Dr. Congello's letter of May 19, 2009, are not "medical opinions" entitled to controlling weight. He stated that Tracy "has been unable to work" and "would be considered totally disabled." AR 461. As noted in *Ellis,* these are conclusions reserved for the Commissioner. However, the opinion Dr. Congello provided in June 2010 is different. He stated that Tracy "should not have exerted himself to lift more than 10 pounds at any time after June, 2006." AR 464. This is a specific opinion as to "the nature and severity of [an applicant's] impairments," as well as what an applicant is capable of doing despite the impairment, and the resulting restrictions. 20 C.F.R. § 404.1527(a)(2). Because Dr. Congello was a treating physician,[3] this opinion was entitled to controlling weight so long as it was

---

[3] The Commissioner appears to suggest that Dr. Congello was not a "treating physician" under the Social Security regulations. Doc. No. 11 at 19. If that is actually the Commissioner's argument, I reject it out of hand. The record leaves no doubt that Dr. Congello has treated Tracy

"well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(d)(2). The ALJ was required to provide "good reasons" for failing to give this opinion controlling weight. *Davidson*, 501 F.3d at 990.

In her decision, the ALJ did not find that Dr. Congello's opinions are not "well-supported by medically acceptable clinical and laboratory diagnostic techniques." Nor does the Commissioner make this argument in his brief. As such, a determination that those opinions are not legally entitled to controlling weight must be based on a finding that they are "inconsistent with the other substantial evidence in [Tracy's] case record." *See* 20 C.F.R. § 404.1527(d)(2). The question before me, then, is whether substantial evidence supports the ALJ's finding that Dr. Congello's 10-pound lifting restriction is inconsistent with the other substantial evidence in the record. It does not.

The ALJ stated that Dr. Congello's opinion is "not consistent with the other physicians' opinions in the record, as a whole," but she offered virtually no analysis of any alleged inconsistencies. AR 23. She also stated that the 10-pound restriction is "not supported by the medical evidence as a whole, nor [Dr. Congello's] own contemporaneous treatment notes" but, again, offered little analysis in support of this statement. *Id.* Indeed, the following portion of the ALJ's ruling appears to constitute her entire explanation:

> Plan notes indicate that the claimant's "good exercise capacity suggests a good 5 years survival.["] Plan notes show that the claimant had no symptoms of congestive heart failure. Treatment notes from March 23, 2007 indicate the claimant['s] ejection fraction had improved to 40% and further reveal that the claimant had been exercising at home, which suggests that his symptoms were not as severe as alleged in connection with this application and appeal. The claimant's treating physician opined that

for heart disease since 1997. *See, e.g.,* AR 368, 394-97. The ALJ correctly described Dr. Congello as "claimant's treating physician." AR 23.

the claimant was capable of lifting 50-55 pounds. On September 23, 2008, after the period in question in the current instance, the claimant was seen having fallen off a ladder while picking apples, which also suggests that his symptoms are not as severe as alleged in connection with his application and appeal.

AR 22. This explanation does not support the ALJ's statement that a 10-pound lifting restriction is "not consistent with the other physicians' opinions in the record." Despite indicating that the record contains multiple contrary opinions, the ALJ referenced only one such opinion, which indicated that Tracy was capable of lifting 50-55 pounds. *Id.* Moreover, the ALJ incorrectly referred to this opinion as coming from "claimant's treating physician." *Id.* In fact, the opinion was provided by Dr. Sarik in March 2007. AR 388. As Tracy notes, Dr. Sarik examined him only one time, and that was to evaluate the need for an implantable defibrillator. Doc. No. 10 at 12-13. The Social Security regulations define a "treating source" as a physician "who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you." 20 C.F.R. § 404.1502. There is no evidence in the administrative record that Dr. Sarik had an "ongoing treatment relationship" with Tracy. As such, the ALJ erred in concluding that he was a "treating physician."[4]

The ALJ's explanation also fails to support her conclusion that a 10-pound lifting restriction is contrary to Dr. Congello's own treatment notes. The referenced notes from March 23, 2007, were Dr. Sarik's, not Dr. Congello's. AR 387-88. I have been unable to locate any findings in Dr. Congello's notes during the relevant time period that

---

[4] The Commissioner contends that Dr. Sarik is a treating source within the meaning of the regulations because he was part of a "treatment team," citing *Shontos v. Barnhart*, 328 F.3d 418 (8th Cir. 2003). Doc. No. 11 at 18. The Commissioner is stretching *Shontos* way too far. In that case, the Eighth Circuit found that the collective opinions of various mental health professionals who each interacted with the claimant on multiple occasions over a long period of time were opinions from treating mental health care providers. *Id.* at 426. *Shontos* does not support an argument that a physician who examines a claimant one time is a treating source simply because he or she practices at the same hospital or clinic as a real treating source.

are inconsistent with a 10-pound lifting restriction. On August 22, 2006, he noted that Tracy complained of "occasional dizziness episodes with exertion." AR 391. He also stated that Tracy's "dizziness episodes are pretty consistent." *Id.* He stated that Tracy "presents a difficult situation" and that he had "premature ventricular contractions" during a Cardiolite stress test. AR 392. While he did state that Tracy had "good exercise capacity," he expressed concern about his "dizziness episodes and his arrhythmias." AR 393. These notes indicate that when Tracy exerted himself, he was prone to suffer dizziness and arrhythmia. This is not inconsistent with an opinion that Tracy should not lift more than 10 pounds.

The ALJ also discounted Dr. Congello's opinion because of its retroactive nature. AR 23. She expressed concern that Dr. Congello may have provided the opinion for improper reasons, such as sympathy for Tracy or a desire to placate an insistent patient. AR 23-24. She acknowledged that "it is difficult to confirm the presence of such motives" but declared that "they are more likely in situations where the opinion in question departs substantially from the rest of the evidence of record, as in the current case." AR 24. Baseless speculation about a treating physician's possible hidden motives or biases hardly counts as a "good reason" for discounting that physician's opinion. This is especially true where, as here, the ALJ failed to explain her conclusion that Dr. Congello's opinion "departs substantially" from the rest of the evidence.

The record is clear that the ALJ either (a) mistakenly attributed the 50-55 pound lifting restriction to Dr. Congello or (b) mistakenly considered Dr. Sarik – who actually imposed that restriction based on a single evaluation – to be a treating physician. I can think of no other explanation for the ALJ's statement that Tracy's "treating physician opined that [Tracy] was capable of lifting 50-55 pounds." Because both explanations are factually incorrect, the ALJ did not provide "good reasons" for discounting the opinion of Dr. Congello, a treating physician, that Tracy was unable to lift more than 10

pounds after June 2006. Nor have I, in the course of my independent review of the record, found substantial evidence supporting the ALJ's conclusion. In short, I find that the record does not support the existence of "good reasons," within the meaning of 20 C.F.R. § 404.1527(d)(2), for discounting Dr. Congello's opinion. That opinion is entitled to be given controlling weight.

As I will discuss later in this report, giving controlling weight to Dr. Congello's opinion requires reversal of the Commissioner's decision. Nonetheless, I will briefly address Tracy's remaining arguments.

**B.** *Did The ALJ Evaluate The Factors Required By 20 C.F.R. § 404.1527(d) In Evaluating Dr. Congello's Opinion?*

If Dr. Congello's opinion is not entitled to controlling weight, the regulations outline factors for the ALJ to consider in deciding what amount of weight to give it:

> When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion.

20 C.F.R. § 404.1527(d)(2). As noted above, the Commissioner must "always give good reasons" for the weight given to a treating source's opinion. *Id.*

The factors to be applied when controlling weight is not given are:

(i)     Length of the treatment relationship and the frequency of examination.

(ii)    Nature and extent of the treatment relationship.

(iii)   Supportability.

(iv)    Consistency [with the record as a whole].

(v)     Specialization.

(vi)    Other factors [which tend to support or contradict the opinion].

20 C.F.R. § 404.1527(d).   While the ALJ's explanation for affording "little weight" to Dr. Congello's opinion discusses some of these factors (consistency and, to a lesser extent, supportability), it does not address others.   The ALJ did not discuss the length of Dr. Congello's treatment relationship with Tracy, the frequency of examinations, the nature and extent of the treatment relationship, or the additional weight that is normally given to the opinion of a specialist "about medical issues related to his or her area of speciality."   20 C.F.R. § 404.1527(d)(5).   If reversal was not required, I would recommend remand of this case with directions that the ALJ provide the required analysis of all of the relevant factors.

## C.     Did The ALJ Err By Giving Greater Weight To Dr. Sarik?

In what amounts to a redundant argument, Tracy contends the ALJ erred in giving more weight to Dr. Sarik's opinion than to Dr. Congello's.   As discussed in Section A, *supra*, the ALJ either (a) incorrectly found Dr. Sarik to be a treating source or (b) incorrectly attributed Dr. Sarik's opinion to Dr. Congello (who is a treating source). Either way, if reversal was not required I would recommend remand with directions that the ALJ conduct an appropriate analysis of the weight to give each opinion.

## D.     Did The ALJ Err In Failing To Provide A Rationale Based On The Record As A Whole For Rejecting Tracy's Testimony?

Finally, Tracy contends the ALJ failed to comply with Social Security Ruling (SSR) 96-7p in rejecting his testimony as to the extent of his limitations.   Unfortunately, his argument on this point is not well-presented.   He simply makes one general reference to SSR 96-7p before undertaking an overview of the record.   He does not explain the manner in which he believes the ALJ failed to comply with the ruling.   It is

unclear if Tracy (a) is arguing that the ALJ failed to conduct the required analysis or (b) simply disagrees with the outcome of that analysis.

SSR 96-7p provides an interpretation of the two-step analysis set forth in 20 C.F.R. § 404.1529. That regulation describes the process for evaluating symptoms, including pain, and requires the ALJ to first determine whether there is objective medical evidence showing the existence of a medical impairment or impairments that could reasonably be expected to produce the pain or other symptoms alleged. If there is such evidence, then the ALJ must evaluate the intensity and persistence of the claimant's symptoms, and the extent to which they affect his ability to work, by considering all of the evidence in the record.

Social Security Ruling 96-7P describes the first step of 20 C.F.R. § 404.1529 as follows:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the individual's pain or other symptoms. The finding that an individual's impairment(s) could reasonably be expected to produce the individual's pain or other symptoms does not involve a determination as to the intensity, persistence, or functionally limiting effects of the individual's symptoms. If there is no medically determinable physical or mental impairment(s), or if there is a medically determinable physical or mental impairment(s) but the impairment(s) could not reasonably be expected to produce the individual's pain or other symptoms, the symptoms cannot be found to affect the individual's ability to do basic work activities.

SSR 96-7P, 1996 WL 374186 (July 2, 1996). Here, the ALJ found Tracy had the following severe impairments that were determined by medical evidence: coronary artery disease, hypertension, status post colon cancer surgery, and hyperlipidemia. AR 20.

The second step of 20 C.F.R. § 404.1529 is interpreted as follows:

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record. This includes the medical signs and laboratory findings, the individual's own statements about the symptoms, any statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record.

SSR 96-7P, 1996 WL 374186 (July 2, 1996). The ALJ undertook this analysis and found that Tracy's "reports of limited daily activities are considered to be outweighed by the other factors discussed herein." AR 22-23.

In short, I find that the ALJ conducted the analysis required by SSR 96-7p. If Tracy is arguing that the ALJ failed to do so, I reject that argument. However, because I have determined that Dr. Congello's 10-pound lifting restriction opinion is entitled to controlling weight, I find that the ALJ's analysis is misplaced. In comparing Tracy's testimony to the medical evidence in the record, the ALJ gave Dr. Congello's opinion "little" weight. AR 23. When that opinion is given controlling weight, Tracy's reports concerning his symptoms are entirely consistent with the medical evidence.

Tracy stated that he prepares sandwiches and soup, limits his lifting to 10 pounds no more than 10-15 minutes a day and that his wife does all the cooking. AR 143-50. His exercise was limited to those rehabilitation exercises prescribed by Dr. Congello. AR 476. He hired others to farm his land and was not involved in physical activity on the farm after June of 2006. AR 494. Between June 2006 and September 21, 2008, Tracy could not lift more than 10 pounds and had to sit down and catch his breath to

avoid getting dizzy after 30-45 minutes of any activity. AR 495-96. He testified that he was even advised not to use a weed eater. AR 496.

The ALJ's erroneous decision to give little weight to Dr. Congello's opinion had the secondary effect of creating a basis for discounting Tracy's credibility. In other words, only after disregarding the opinion of Tracy's treating physician could the ALJ conclude that Tracy's description of his symptoms is inconsistent with the objective medical evidence. Once Dr. Congello's opinion is given the controlling weight to which it is entitled, the justification for discounting Tracy's credibility evaporates. Thus, even if reversal was not mandated here, I would recommend remand with directions that the ALJ reassess Tracy's credibility after properly weighing the medical evidence.

### E.    *What Is The Effect Of Giving Controlling Weight to Dr. Congello's Opinion?*

It is Dr. Congello's opinion that Tracy "should not have exerted himself to lift more than 10 pounds at any time after June, 2006." AR 464. I have found that this opinion is entitled to controlling weight and that the ALJ erred by giving it only little weight. I must now consider the proper remedy.

In reviewing the final decision of the Commissioner, "[t]he court shall have power to enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The court may enter an immediate finding of disability only if the record "overwhelmingly supports" such a finding, otherwise, the case is remanded for further administrative proceedings. *Buckner v. Apfel*, 213 F.3d 1006, 1011 (8th Cir. 2000).

Such "overwhelming support" is present here. The vocational expert testified, in response to a hypothetical question from the ALJ, that an individual limited to

sedentary work, including lifting and carrying ten pounds occasionally and five pounds frequently, could not perform any of Tracy's past relevant work and would have no transferrable skills. AR 508. Under the Commissioner's regulations, a person aged 50 to 54[5] who can no longer perform vocationally-relevant past work and has no transferrable skills is normally considered to be disabled. *See* 20 C.F.R. Part 404, Subpart P, Appendix 2 at § 201.00(g). And, in fact, the applicable grid rule for sedentary work for a person in Tracy's situation provides that he is disabled. *See* Grid Rule 201.14. Thus, once Dr. Congello's opinions are given the appropriate, controlling weight, the Commissioner's own rules require a finding that he is disabled as of the alleged onset date, which is June 15, 2006. Under these circumstances, remand is not necessary.

## *Recommendation*

For the reasons set forth above, IT IS RESPECTFULLY RECOMMENDED that the Commissioner's decision be **reversed** and that judgment be entered in favor of Tracy and against the Commissioner. I further recommend that the case be remanded pursuant to sentence four of 42 U.S.C. § 405(g) for calculation and award of benefits with a disability onset date of June 15, 2006.

Objections to this Report and Recommendation in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b) must be filed within fourteen (14) days of the service of a copy of this Report and Recommendation. Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* Fed. R. Civ. P. 72. Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation as well as the right to appeal

---

[5] Tracy was 52 years old as of June 2006. AR 25.

from the findings of fact contained therein.  *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**IT IS SO ORDERED.**

**DATED** this 28th day of December, 2012.

_____
LEONARD T. STRAND
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA